UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL KROEGER, | Case No.  13-cv-05254-SI |
| Plaintiff, | |
| v. | **ORDER REVERSING AND REMANDING CASE FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |
| CAROLYN W. COLVIN, Commissioner of Social Security | |
| Defendant. | |

Now before the Court is plaintiff's appeal following the denial of disability insurance benefits ("DIB") by the administrative law judge ("ALJ").  Plaintiff filed a motion for summary judgment, requesting that the Court reverse the denial of DIB and grant benefits.   In the alternative, plaintiff seeks remand of this matter for a new hearing.  The Commissioner of Social Security filed a cross-motion to affirm the denial of DIB.  For the reasons stated below, the Court REVERSES the denial of DIB and REMANDS this case pursuant to sentence four of 42 U.S.C. § 42(g) for further proceedings consistent with this Order.

# BACKGROUND

## I.      Administrative Proceedings

In July of 2010, plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act.   Administrative Record ("AR") at 56.   The applications were denied initially and on reconsideration. *Id*. at 40, 45.  Plaintiff requested a hearing, which was held on May 25, 2012. *Id*. at 1323.  On June 14, 2012, the ALJ granted plaintiff's SSI application, finding he had been disabled since June 29, 2011. *Id*. at 26.  However, the ALJ denied plaintiff's DIB application,

finding he was not disabled prior to or on December 31, 2010, the last date he was insured.[1]  *Id.*  This became the Commissioner's final decision when the Appeals Council denied review on September 5, 2013.  *Id.* at 4.  On November 12, 2013, plaintiff commenced this action to seek judicial review pursuant to 42 U.S.C. §§ 405(g) and 1380(c)(3) on grounds that the ALJ erred in denying DIB.  Dkt. 1, Compl. at 2.  Plaintiff contends that he was disabled on December 31, 2010, the last date he was insured, thereby making him eligible for DIB.

## II.   Medical History

At the time of the administrative hearing, plaintiff Michael Kroeger was a fifty-one year-old veteran with a long history of bipolar disorder, mood disorder, episodic anxiety, depression, and substance use.  AR at 142.  After dropping out of high school, plaintiff enlisted in the Navy and served in aviation maintenance.  *Id.*  Plaintiff left the service in 1985 and worked as a carpenter.  *Id.*  During the early 1990s, plaintiff's mental health declined, and plaintiff began self-medicating with drugs.  *Id.*  Due to his worsening psychiatric symptoms, plaintiff was unable to work in 1994 and has not worked since.  *Id.*

In 2008 and 2009, plaintiff was treated at Kaiser Permanente for his bipolar and mood disorders and for his substance dependency.  *Id.* at 152-201.  On January 6, 2010, plaintiff was voluntarily hospitalized through the Veterans' Administration ("VA") medical system and treated for bipolar disorder, depression, anxiety, suicidal ideation, opioid dependence, and amphetamine abuse.  *Id.* at 433-483. After being discharged on January 26, 2010, plaintiff sought outpatient treatment for his mental health symptoms and substance dependency.  *Id.* at 419.  Throughout March and April of 2010, plaintiff received therapy and medication for his depression and anxiety

[1] To qualify for DIB (Title II benefits), a claimant must be fully insured and have at least twenty quarters of coverage in the forty-quarter period, which ends with the quarter in which the disability occurred.  *See* 42 U.S.C. §§ 416(i)(3), 423(c)(1); 20 C.F.R.  404.130(b).  The claimant has the burden of proof to demonstrate that he or she was disabled prior to or on the last insured date, which is referred to as Date Last Insured.  *See Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998) (citing 42 U.S.C. § 423(c)).

United States District Court
Northern District of California

(*Id*. at 368, 371, 376, 378, 381, 387), and plaintiff was also admitted to the VA emergency room in between psychiatric appointments due to his increasing anxiety (*Id*. at 364, 366, 385).

Sometime in mid-2010,[2] plaintiff relapsed into methamphetamine and opiate use and was not treated at the VA for several months. *Id*. at 361-64. On November 5, 2010, plaintiff was seen at the VA by psychiatrist Dr. Rukhsana Khan, MD and was diagnosed with "[p]olysubstance abuse and dependence [and] [m]ood disorder secondary to active substance abuse." *Id*. at 361-62. On the same day, plaintiff began seeing a mental health clinical social worker Omar Geray, LCSW and expressed interest in the VA's detoxification and rehabilitation programs. *Id*. at 360-61. On December 20, 2010, while waiting for an opening in one of the VA's residential treatment programs, plaintiff was seen by psychiatrist Dr. Vanessa de la Cruz, MD and was diagnosed with amphetamine abuse, opioid dependence, mood disorder, and substance-induced bipolar with rapid cycling. *Id*. at 356-58. December 31, 2010 was the last date plaintiff was insured. *Id*. at 99.

On January 5, 2011, plaintiff was admitted into the VA's Foundations of Recovery addiction treatment program. *Id*. at 343. His psychiatric intake evaluation lists multiple mood disorder symptoms, including suicidal ideation and depressive episodes. *Id*. at 313-14, 1129-39. During his hospitalization, plaintiff was treated for substance dependency, bipolar disorder, mood disorder, depression, and suicidal ideation. *Id*. at 1028-29, 1035-36, 1041-42, 1080, 1130. Upon his discharge on February 4, 2011, plaintiff was placed on the waitlist for the long-term inpatient Homeless Veterans Rehabilitation Program ("HVRP"). *Id*. at 1080. While waiting for an opening at HVRP, plaintiff continued to receive outpatient treatment through the VA for his substance dependency and his ongoing mental health symptoms, and plaintiff was prescribed Effexor for his depression. *Id*. at 1010-12.

On June 29, 2011, plaintiff entered the VA's First Step Program for relapse prevention training, and on September 1, 2011, plaintiff was discharged and directly transferred to HVRP. *Id*. at 673, 721. During his time as an inpatient at First Step Program and HVRP, plaintiff abstained from all substances, received training for relapse prevention and life skills, and was treated for his

United States District Court
Northern District of California

---

[2] Plaintiff filed his applications for DIB and SSI with the Social Security Administration in July of 2010. AR at 56.

mental health symptoms.  *Id*. at 673, 722, 989-90, 992.  Plaintiff was discharged on March 15, 2012, and received outpatient care throughout 2012.[3]  *Id*. at 760, 736-58.

### III.    Medical and Psychological Evidence

In addition to reviewing treatment records, the ALJ considered the opinions of three non-treating mental health professionals: (1) Dr. Scaramozzino, an examining consultative psychologist who examined plaintiff on September 4, 2010 (*Id*. at 202); (2) Dr. Bilik, a non-examining consultative psychologist who reviewed plaintiff's records and submitted a report on October 6, 2010 (*Id*. at 209, 211); and (3) Dr. Anderson, a non-examining psychiatrist who testified at plaintiff's hearing on May 25, 2012 (*Id*. at 1328).

### A.  Dr. Scaramozzino, PhD

On September 4, 2010, examining psychologist Dr. James Scaramozzino, PhD conducted a consultative psychiatric evaluation on behalf of the Social Security Administration ("SSA").  *Id*. at 202.  Dr. Scaramozzino examined plaintiff and reviewed plaintiff's medical records from his treatment at Kaiser Permanente in 2008.  *Id*.  Dr. Scaramozzino noted that the severity of plaintiff's psychiatric symptoms was in the "moderate to severe range as regards to [*sic*] his ongoing use of illicit drugs" and indicated that the likelihood of the claimant's mental condition improving in the next 12 months was "poor."  *Id*. at 207.  He also stated that "[t]he diagnosis of bipolar did not seem to be appropriate" and that "there does not appear to be any sustainable period of time where a more clear diagnosis could be made because of the ongoing consistent use of illicit drugs."  *Id*.

He diagnosed plaintiff with amphetamine dependence and opined that, due to ongoing substance use, plaintiff had moderate to marked impairments in the following work-related functioning: ability to accept instructions from a supervisor and respond appropriately, ability to complete a normal workday and workweek without interruptions at a consistent pace, and ability

---

[3] The Administrative Record and plaintiff's Motion for Summary Judgment do not provide information regarding plaintiff's health status beyond 2012.

United States District Court
Northern District of California

to deal with various changes in the work setting. *Id*. at 207-208. He also opined that, due to ongoing substance use, plaintiff had moderate impairment in his ability to understand and remember very short and simple instructions, ability to maintain concentration and attention, and ability to interact with co-workers. *Id*. He also stated that plaintiff would have a fair to high likelihood of emotionally deteriorating in a work environment. *Id*.

### B. Dr. Bilik, PsyD

On October 6, 2010, non-examining SSA consultative psychologist Dr. Harvey Bilik, PsyD reviewed plaintiff's records from Kaiser Permanente for 2008 and 2009, records from the VA hospital,[4] and the consultative examination conducted by Dr. Scaramozzino. *Id*. at 209. Dr. Bilik interviewed plaintiff over the phone but did not examine plaintiff. *Id*. On the basis of his review, Dr. Bilik noted the following medically determinable impairments: mood disorder not otherwise specified[5] and amphetamine abuse/dependence. *Id*. at 215, 218. He opined that plaintiff had mild limitations in activities of daily living and moderate limitations in maintaining social functioning and in maintaining concentration, persistence, or pace. *Id*. at 220. He also noted moderate limitations in workplace functioning in areas related to sustained concentration and persistence, social interaction, and adaptation. *Id*. at 223-24. Then, he determined that plaintiff only had moderate functional limitations in any domain, including limitations related to substance use, and that if plaintiff manifested any ongoing marked functional limitations, then "[plaintiff's substance use] would likely be seen as a primary factor." *Id*. at 225.

---

[4] While Dr. Bilik indicates that records from the VA hospital were reviewed (AR at 209), the "Consultant's Notes" only mention the treatment records from Kaiser and Dr. Scaramozzino's consultative examination (AR at 222). Plaintiff argues that Dr. Bilik failed to consider more recent records from the VA hospital, including plaintiff's inpatient stay in January 2010. Dkt. 17, Pl.'s Mot. for Summ. J. at 9.

[5] The exact diagnosis was identified as "MOOD ORDER NOS; r/o BIOPOLAR DISORDER," which translates to "mood disorder not otherwise specified; rule out bipolar disorder." AR at 215.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

**C.  Dr. Anderson, MD**

Dr. David Anderson, a non-examining psychiatrist, reviewed plaintiff's records and testified as the medical expert at plaintiff's hearing on May 25, 2012.  *Id*. at 1328, 1332, 1335.  On May 25, 2012, Dr. Anderson testified that beginning on June 29, 2011, the day that plaintiff entered long-term treatment at the VA, plaintiff suffered ongoing mental health symptoms despite maintaining sustained sobriety.   Based on this fact, Dr. Anderson opined that there was "compelling evidence" that plaintiff's underlying mental conditions, independent of plaintiff's substance use, met or equaled one of the listings of severe impairments (listings 12.02 and 12.04) beginning on June 29, 2011.  *Id*. at 1336-37.  However, he testified that "from 2008 through 2010, it was clear . . . that [plaintiff's] methamphetamine use was highly material" and that plaintiff's mental conditions were not disabling independent of plaintiff's substance use.  *Id*. at 1337.

The ALJ gave significant weight to the opinion of the SSA psychological consultant Dr. Bilik to find that plaintiff was not disabled prior to June 29, 2011, thereby denying DIB.  *Id*. at 23. The ALJ indicated that "even if more weight was given to Dr. Anderson, or to certain aspects of Dr. Scaramozzino's report, the outcome of the case would have remained the same [because] . . . these opinions all indicated that drug abuse was a material, contributing factor to disability."  *Id*. Plaintiff contends that the ALJ improperly evaluated the medical opinions in finding that plaintiff was not disabled prior to June 29, 2011 and that plaintiff's substance use was a material, contributing factor prior to June 29, 2011. Plaintiff argues that he is eligible for DIB because he was disabled on December 31, 2010, the last date insured, and his substance use was not a material, contributing factor.

**LEGAL STANDARDS**

**I.     Standard of Review**

The Social Security Act authorizes judicial review of final decisions made by the Commissioner.  42 U.S.C. § 405(g).  Here, the decision of the ALJ stands as the final decision of the Commissioner because the Appeals Council declined review.  20 C.F.R. § 416.1481. This

Court may enter a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing.  42 U.S.C. § 405(g).

Factual findings of the Commissioner are conclusive if supported by substantial evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2001).  The Court may set aside the Commissioner's final decision when that decision is based on legal error or where the findings of fact are not supported by substantial evidence in the record taken as a whole.  *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999).  Substantial evidence is "more than a mere scintilla but less than a preponderance."  *Id.* at 1098.  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Molina v. Astrue*, 674 F.3d 1104, 1110 (2012) (internal quotations omitted).  To determine whether substantial evidence exists, the Court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Commissioner's conclusion.  *Tackett*, 180 F.3d at 1098.  "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion.  *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  When no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings").  But when there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record the ALJ would be required would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *Id.*

## II.     The Five-Step Disability Inquiry

A claimant is "disabled" under the Social Security Act if: (1) the claimant "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than twelve months," and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 1382c(a)(3)(A)-(B).  The Social Security Administration regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520.  The claimant has the burden of proof for steps one through four, and the Commissioner has the burden of proof for step five.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  *Id*. at 1098 n. 3.  The five steps of the inquiry are:

> 1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).
>
> 5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

In between the third and fourth step, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  20 C.F.R. § 416.920(e).  To determine the RFC, the ALJ considers the impact of the claimant's symptoms on his or her ability to meet the physical, mental, sensory, and other requirements of work.  *Id.* § 416.945(a)(4).  The ALJ will evaluate all the claimant's symptoms and the extent to which these symptoms are consistent with evidence in the record.  *Id.* § 416.929(a).  The evidence can include the claimant's own statements about his or her symptoms, but such statements must be adequately supported by the record in order to establish a disability.  *Id.*  In order to determine whether the claimant's statements are adequately supported, the ALJ

8

must first determine whether the claimant has a medical impairment that could reasonably be expected to produce his or her symptoms, and then must evaluate the intensity and persistence of the claimant's symptoms. *Id.* When evaluating intensity and persistence, the ALJ must consider all of the available evidence, including the claimant's medical history, objective medical evidence, and statements about how the claimant's symptoms affect him or her. *Id.* The ALJ cannot reject statements about the intensity and persistence of symptoms solely because no objective medical evidence substantiates the statements. *Id.* § 416.929(c)(2). The ALJ must also consider factors relevant to the claimant's symptoms, such as the claimant's daily activities, the claimant's medications and treatment, any other measures the claimant uses to alleviate symptoms, precipitating and aggravating factors, and any other factors relevant to the claimant's limited capacity for work due to his or her symptoms. *Id.* § 416.929(c)(3)(i)-(vi). After determining the RFC, the ALJ proceeds to step four and five of the disability inquiry.

### III.   Drug Addiction and Alcoholism (DAA)

If, considering all of the claimant's medically determinable impairments, there is a determination that the claimant is disabled, and there is medical evidence showing drug addiction and alcoholism ("DAA"), then the ALJ must determine whether the DAA is "material" to the finding that the claimant is disabled. 20 C.F.R. § 404.1535. The Social Security Act provides that a claimant "shall not be considered disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the . . . determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). In determining whether a claimant's DAA is material, the test is whether an individual would still be found disabled if he or she stopped using drugs or alcohol. *See* 20 C.F.R. §§ 404.1535(b), 416.935(b); *Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998). The ALJ must "evaluate which of [the claimant's] current physical and mental limitations . . . would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the ALJ determines that the claimant's remaining limitations are disabling, then the claimant's DAA is not a material contributing factor

9

1    to the determination of disability, and the claimant is disabled, independent of his or her DAA. *See*

2    20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).  The claimant bears the burden of proving that

3    his substance use is not a material contributing factor to his disability.  *Parra*, 481 F.3d at 745.

4

5                                            **ALJ'S DECISION**

6           In his decision, the ALJ found June 29, 2011 as the disability onset date and December 31,

7    2010 as the Date Last Insured.[6]  The ALJ found: (1) plaintiff was eligible for SSI, which is not

8    dependent on a claimant's insured status, but (2) plaintiff was not eligible for DIB, which requires

9    a claimant to have been disabled on or before the Date Last Insured.[7]  *Id*. at 26.  Additionally, the

10   ALJ found that plaintiff was not disabled prior to June 29, 2011 and that plaintiff's substance use

11   was a material, contributing factor prior to June 29, 2011.  *Id*.  Plaintiff does not dispute the ALJ's

12   ruling that plaintiff is disabled and eligible for SSI.  Rather, plaintiff argues that the ALJ erred in

13   designating June 29, 2011 as the disability onset date and contends that he became disabled on

14   December 31, 2010, thereby making him eligible for DIB.  Dkt. 17, Pl.'s Mot. for Summ. J. at 12,

15   21.

16          The ALJ first established that plaintiff's Date Last Insured, or the last date of plaintiff's

17   insured status, was December 31, 2010.  *Id*. at 17.  The ALJ then applied the five-step disability

18   analysis set forth by 20 C.F.R. § 416.920(a)(4).  At step one, the ALJ found that plaintiff had not

19   engaged in substantial gainful activity since December 31, 2010, the onset date alleged by

20

21   ───────────────

22   [6] At the hearing on May 25, 2012, plaintiff argued for an alleged onset date of June 29, 2011.  AR
     at 14.  At the time, plaintiff believed that the Date Last Insured was March 31, 1998 and that a

23   claim for DIB would be futile.  Dkt. 17, Pl.'s Mot. for Summ. J. at 12.  After the hearing, plaintiff
     found out that the Date Last Insured was December 31, 2010 due to "DIB Freeze Rules" and

24   amended the alleged onset date to December 31, 2010 in order to pursue his DIB claim.  AR at 14;
     Pl.'s Mot. for Summ. J. at 12.  The ALJ's decision acknowledged that plaintiff amended the

25   alleged onset date to December 31, 2010.  AR at 14.

26   [7] In order to qualify for SSI or DIB, a claimant must be disabled within the meaning of the SSA.
     SSI benefits do not depend on a claimant's insured status.  However, in order to qualify for DIB, a

27   claimant must be disabled on or before the claimant's insured status expires.  *See* 42 U.S.C. §§
     416(i)(3), 423(c)(1); 20 C.F.R. § 404.130(b).

28

1    plaintiff.  *Id.* at 17.  At step two, the ALJ found that since the alleged onset date of December 31,

2    2010,[8] plaintiff's severe impairments were polysubstance abuse and bipolar disorder vs.

3    substance-induced mood disorder.  *Id.*  The ALJ found that beginning on June 29, 2011, plaintiff's

4    severe impairments were mood disorder, anxiety, and emotional/behavior changes related to drug

5    abuse.  *Id.*

6        At step three, the ALJ made separate findings for the period before June 29, 2011 and the

7    period after June 29, 2011, the date that plaintiff entered the VA's long-term rehabilitation

8    program and achieved sustained sobriety.  First, the ALJ found that prior to June 29, 2011,

9    plaintiff's impairments were not severe enough to meet one of the listed mental impairments in 20

10   C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 20.  The ALJ found that plaintiff had "*mild*

11   restrictions in activities of daily living, *moderate* difficulties in maintaining social functioning,

12   *moderate* difficulties in maintaining concentration persistence and pace, and *no* episodes of

13   decompensation absent drug or alcohol use," but the ALJ did not find evidence of ongoing or

14   "marked" limitations in any particular function area prior to June 29, 2011.  *Id.* (emphasis in

15   original).

16       For the period beginning on June 29, 2011, the ALJ found that the severity of plaintiff's

17   impairments met the "C" criteria of section 12.02 and 12.04 of 20 C.F.R. Part 404, Subpart P,

18   Appendix 1.  *Id.* at 25.  The ALJ gave weight to the evidence of the "medically documented

19   persistence of depressive syndrome, including numerous symptoms such as anhedonia, sleep

20   disturbance, psychomotor agitation, feelings of guilt or worthlessness, difficulty concentrating,

21   decreased energy, and suicidal ideation."  *Id.*  Based on the ALJ's step three analysis, the ALJ

22   determined that the plaintiff was disabled beginning on June 29, 2011, thus plaintiff qualified for

23   SSI.  *Id.* at 25-26.

---

[8] The ALJ opinion actually states "alleged onset date, June 29, 2011," but this appears to be an error.  Both parties agree and assume that the onset date *alleged by plaintiff* is December 31, 2010.  Dkt. 17, Pl.'s Mot. for Summ. J. at 12 fn 1;  Dkt. 20, Def.'s Opp'n at 3.

United States District Court
Northern District of California

United States District Court
Northern District of California

To determine whether plaintiff qualified for DIB, the ALJ applied the rest of the five-step inquiry to the period prior to June 29, 2011.  As the Date Last Insured is December 31, 2010, plaintiff qualifies for DIB only if he was disabled on that date.  In assessing plaintiff's Residual Functional Capacity (RFC) prior to June 29, 2011, the ALJ found that "the record did not support the presence of ongoing marked limitations."  *Id*. at 23.  The ALJ evaluated plaintiff's testimony, medical records, and the opinions of plaintiff's treating, examining, and non-examining mental health professionals.  *Id*. at 20-24.  The ALJ gave significant weight to the opinion of the SSA psychological consultant, Dr. Harvey Bilik, PsyD, who opined that, despite substance use, plaintiff had an "essentially normal mental status examination" and that plaintiff "did not appear to have more than moderate limitations in any functional domain."  *Id*. at 22-23.  As to plaintiff's own testimony, the ALJ determined that plaintiff's testimony regarding the severity of the symptoms was not fully credible to the extent that the testimony was inconsistent with the objective medical evidence.  *Id*. at 21.  Similarly, the ALJ gave little weight to opinions that indicated moderate to severe symptoms, such as parts of Dr. Scaramozzino's report or the opinion of plaintiff's treating clinical social worker Omar Geray.  *Id*. at 23.

Within the RFC assessment, the ALJ analyzed whether, prior to June 29, 2011, plaintiff's substance use was a "material contributing factor" to plaintiff's claimed disability.  *Id*. at 23.  The ALJ noted treatment records where plaintiff's treating and examining psychiatrists and psychologists indicated that they were unsure whether the plaintiff's mild to moderate symptoms were related to mental health issues or substance use.  *Id*. at 22-23.  The ALJ also gave some weight to Dr. David Anderson, the non-examining medical expert at plaintiff's hearings, who opined that, at least from 2008 to 2010, plaintiff's substance use was "highly material" to a finding of disability.  *Id*. at 23.  The ALJ concluded that prior to June 29, 2011, plaintiff's substance use was a material contributing factor to his disability because the ALJ could not identify a time when plaintiff was "clean and sober and had ongoing marked limitations."  *Id*. at 23.  Based on the ALJ's "materiality" findings, the ALJ found that prior to June 29, 2011, plaintiff did not have ongoing marked limitations independent of his substance use.  *Id*. at 23.

United States District Court
Northern District of California

In light of the RFC assessment, the ALJ found that prior to June 29, 2011, plaintiff had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:   plaintiff was capable of understanding, remembering, and carrying simple and detailed but not complex instructions, and plaintiff would benefit from reduced interaction with the public.  *Id*. at 20.  The ALJ continued onto step four and five of the disability inquiry to analyze the period prior to June 29, 2011.  At step four, the ALJ found that plaintiff had no past relevant work.  *Id*. at 24.  At step five, the ALJ determined that the nonexertional limitations on plaintiff's ability to work had little or no effect on the occupational base of unskilled work at all exertional levels.  *Id*.  The ALJ did not utilize the testimony of a Vocational Expert.  *Id*. at 24-25.  Rather, the ALJ relied on the Medical-Vocational Guidelines and found that plaintiff can perform other work identified by the SSA, such as a collator operator, a cleaner, and a photocopy machine operator, which are all light and unskilled positions.   *Id*. at 24.    Therefore, the ALJ concluded that plaintiff was not disabled prior to June 29, 2011, denying plaintiff DIB.  *Id*. at 26.

## DISCUSSION

Plaintiff appeals the ALJ's denial of DIB and argues that his disability onset date was December 31, 2010, the last date he was insured.  The ALJ determined that the disability onset date was June 29, 2011 and that prior to June 29, 2011, plaintiff was not disabled and his substance use was "material."  The critical issue for plaintiff's DIB eligibility is whether plaintiff was disabled on December 31, 2010.  Accordingly, the Court will consider whether substantial evidence supports the ALJ's finding that plaintiff's mental impairments were not severe enough to be disabling prior to June 29, 2011 and whether substantial evidence supports the ALJ's finding that plaintiff's substance use was a material, contributing factor prior to June 29, 2011.

I.      **The ALJ committed reversible error by improperly considering the impact of plaintiff's substance use at the severity stage of the disability analysis**

Plaintiff contends that he was disabled on December 31, 2010 and that the ALJ erred in designating June 29, 2011 as the onset date.  In order to prove that the onset date was December 31, 2010, plaintiff must demonstrate that his mental impairments were severe enough to be

disabling on that date.  *See* 42 U.S.C. § 1382c(a)(3)(A); *see Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998) (claimant bears the burden of proof to demonstrate *when* his impairments became disabling).  However, as with the other stages of the disability determination, the ALJ has a duty to assist in developing the record to establish the evidentiary basis for the onset date.  *Id.*  (citing *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991)).

The Ninth Circuit has ruled that when a claimant has a history of drug or alcohol use, the ALJ must *first* determine the severity of the claimant's symptoms without attempting to filter out which impairments are related to the claimant's drug or alcohol use.  *Bustamante*, 262 F.3d at 955 (reversed and remanded with instructions for the ALJ to proceed with step three (and four and five, if necessary) of the disability inquiry without attempting to determine the impact of the DAA on the claimant's mental impairments).  If, and only if, the ALJ determines that the claimant's impairments, including the impairments related to drug or alcohol use, are severe enough to be disabling, then the ALJ proceeds in assessing the materiality of the claimant's DAA, i.e. whether claimant would still be found disabled if she or he stopped using drugs or alcohol.  *Id.* (interpreting 20 C.F.R. §§ 404.1535, 416.935); *see also* SSR[9] 13-2p, 78 Fed. Reg. at 11941.  Here, the ALJ's assessment of the severity of plaintiff's mental impairments prior to June 29, 2011, was improper because he attempted to filter out symptoms that were related to plaintiff's substance use.

At step three of the disability inquiry, the ALJ made separate findings regarding the severity of plaintiff's impairments prior to June 29, 2011 and beginning on June 29, 2011, the date plaintiff entered the VA's residential treatment program and maintained long-term sobriety.  AR at 20, 25.  However, the ALJ did not cite evidence indicating how the severity of plaintiff's symptoms differed between the two periods other than the impact of plaintiff's substance use.  Beginning on June 29, 2011, the ALJ found that plaintiff's impairments were severe enough to

---

[9] Social Security Rulings in the Federal Register are published by the Commissioner of Social Security and are binding on all components of the Social Security Administration.  20 C.F.R. § 402.35(b)(1).

United States District Court
Northern District of California

meet the listings 12.02 and 12.04, making plaintiff presumptively disabled on that date.  *Id*. at 25.

Prior to June 29, 2011, the ALJ found that plaintiff's impairments were not severe enough to meet

one of the listed impairments.  *Id*. at 20.  To support the finding that plaintiff's mental

impairments became severe enough to meet the listings beginning on, but not prior to, June 29,

2011, the ALJ gave "great weight" to the opinion of Dr. Anderson, a non-examining psychiatrist,

who testified at the hearing that plaintiff's substance use would be "highly material" to a finding

of disability from 2008 to 2010.  *Id*. at 25.  It was improper for the ALJ to use the "materiality" of

plaintiff's substance use to evaluate whether the severity of plaintiff's mental impairments met one

of the listed impairments prior to June 29, 2011.  *See Bustamante*, 262 F.3d at 955; s*ee also Green

v. Colvin*, No. CV 14-02043 AN, 2014 WL 6669856, at *2 (C.D. Cal. Nov. 21, 2014) (holding that

"[t]he ALJ erred by improperly considering the impact of the plaintiff's substance abuse at the

severity stage of the sequential analysis").

 After finding that plaintiff's impairments were not severe enough to meet the listed

impairments prior to June 29, 2011, the ALJ proceeded to assess plaintiff's RFC prior to June 29,

2011.  To determine a claimant's RFC, an ALJ must consider the impact of a claimant's

symptoms on his or her ability to meet the physical, mental, sensory, and other requirements of

work.  20 C.F.R § 416.945(a)(4).  In evaluating the impact of plaintiff's symptoms, the ALJ

attempted to exclude evidence of plaintiff's symptoms that were related to substance use.  The

ALJ found that plaintiff's testimony and treatment records regarding the severity of symptoms

were inconsistent with the opinions of the SSA consultants to the extent that the symptoms were

"relatable to substance abuse."  AR at 21-22.  Then, the ALJ noted that "prior to June 29, 2011,

treating and examining physicians were unsure whether the claimant's symptoms were related to

mental issues *or* drug abuse" and determined that plaintiff's substance use was a material,

contributing factor prior to June 29, 2011.  *Id*. at 23 (emphasis in original).  Based on these

findings, the ALJ made an RFC assessment that excluded evidence indicating increased symptom

severity, reasoning that the increased severity was related to substance use.  Again, this was

improper because the ALJ prematurely considered and separated out the impact of plaintiff's

United States District Court
Northern District of California

substance use prior to completing the five-step disability inquiry.  *See Bustamante*, 262 F.3d at 955.

It was improper for the ALJ to consider the materiality of plaintiff's substance use while assessing the severity of plaintiff's mental impairments prior to June 29, 2011, and it was improper for the ALJ to reject evidence of increased severity of symptoms based on the notion that any evidence of increased severity was due to plaintiff's substance use.  Upon remand, in evaluating the severity of plaintiff's impairments prior to June 29, 2011, the ALJ should assess all of plaintiff's impairments without attempting to separate out symptoms related to substance use. The ALJ should not consider whether plaintiff's substance use was material until *after* a finding of disability.  *See Bustamante*, 262 F.3d at 955.

**II.     Substantial evidence does not support the ALJ's conclusion that plaintiff's impairments were not severe enough to be disabling prior to June 29, 2011 regardless of substance use**

The ALJ also concluded that plaintiff's mental impairments were not severe enough to be disabling prior to June 29, 2011, *even if* the symptoms related to plaintiff's substance use were included and not separated out.  The ALJ gave "significant" weight to Dr. Bilik, a non-examining consultative psychologist, who opined that "despite methamphetamine use, [plaintiff] had an essentially normal mental status examination."  AR at 22, 23.  In contrast, Dr. Scaramozziono, who examined plaintiff on September 4, 2010, noted that plaintiff's symptom severity was "in the moderate to severe range as regards to [*sic*] his ongoing use of illicit drugs" and that plaintiff had moderate to marked impairments in several work-related functioning.  *Id*. at 207-208.  The ALJ erred in rejecting portions of examining psychologist Dr. Scaramozzino's report in favor of the opinion of non-examining psychologist Dr. Bilik.  A non-examining physician's opinion cannot by itself constitute substantial evidence to support the ALJ's rejection of an examining physician's opinion.  *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (if a treating or examining physician's opinion on disability is controverted, it can be rejected only with specific and legitimate reasons supported by substantial evidence in the record).  The ALJ does not give a reason for why Dr. Bilik's opinion should be given significant weight over the opinion of Dr.

United States District Court
Northern District of California

1    Scaramozzino, an examining consultant, other than the ALJ's conclusion that "even if more

2    weight was given to . . . certain aspects of Dr. Scaramozzino's report, the outcome of the case

3    would have remained the same; these opinions all indicated that drug abuse was a material,

4    contributing factor to disability." AR at 23.  The materiality of plaintiff's substance use is not a

5    specific and legitimate reason to reject Dr. Scaramozzino's opinion because it was improper for

6    the ALJ to consider the materiality of plaintiff's substance use prior to completing the five-step

7    disability inquiry.   *See Bustamante*, 262 F.3d at 955.   Thus, the ALJ's finding that plaintiff's

8    impairments, prior to June 29, 2011, were not severe enough to be disabling regardless of the

9    impact of substance use is not supported with substantial evidence.

10

11   **III.    Substantial evidence does not support the ALJ's determination that plaintiff's
           substance use was a material, contributing factor prior to June 29, 2011**

12        In addition to concluding that plaintiff's impairments were not severe enough to be

13   disabling prior to June 29, 2011, the ALJ determined even if plaintiff's impairments were

14   disabling, plaintiff's substance use was a material, contributing factor to a finding of disability

15   prior to June 29, 2011.  Because the ALJ found that plaintiff's substance use was material prior to

16   June 29, 2011, the ALJ concluded that plaintiff was not disabled on December 31, 2010, the Date

17   Last Insured, thereby denying DIB.   Plaintiff contends that the ALJ improperly analyzed the

18   materiality of plaintiff's substance use and that plaintiff's substance use was not a material,

19   contributing factor prior to June 29, 2011.

20        Plaintiff bears the burden of demonstrating that his substance use was not a material

21   contributing factor to a finding of disability.  *See* 20 C.F.R. § 404.1535; *Parra*, 481 F.3d at 745.

22   The relevant inquiry is whether plaintiff's disabling impairments would remain if plaintiff stopped

23   his substance use.  *See* 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).  Recognizing the difficulty in

24   evaluating disability cases with co-occurring DAA and mental disorders, the Ninth Circuit has

25   distinguished "between substance abuse contributing to the disability and *the disability remaining*

26   *after the claimant stopped using drugs or alcohol*" and has found that "[j]ust because substance

27   abuse contributes to a disability does not mean that when the substance abuse ends, the disability

28   will too."  *Sousa*, 143 F.3d at 1245 (emphasis in original).  An ALJ's finding that the substance

use is material must be supported with evidence in the record that is fully developed and that establishes that the claimant's co-occurring mental disorder would improve to the point of nondisability in the absence of DAA.  SSR 13-20, 78 Fed. Reg. at 11943-44.

Here, to conclude that plaintiff's substance use was material prior to June 29, 2011, the ALJ relied on medical opinions that indicated that plaintiff's substance use contributed to plaintiff's symptoms, but did not analyze whether plaintiff's disability would remain if plaintiff stopped the substance use.  The ALJ described a long history of plaintiff's substance use and mentioned treatment records that indicated that plaintiff's substance use could "cloud" the accuracy of psychiatric diagnoses.  AR at 22.  Then, the ALJ relied upon two non-examining medical opinions.  First, on October 6, 2010, Dr. Bilik reported that plaintiff's substance use "would likely be seen as a primary factor" to the severity of plaintiff's symptoms.  *Id*. at 22, 225. Second, at the hearing on May 25, 2012, Dr. Anderson testified that plaintiff's substance use was "highly material" to a finding of disability between 2008 and 2010.  *Id*. at 23, 25, 1337.  However, the ALJ did not cite medical evidence and did not analyze whether plaintiff's mental impairments would remain if plaintiff discontinued his substance use.  The relevant inquiry in evaluating disability cases with co-occurring DAA and mental disorders is not whether plaintiff's substance use contributed to the disability, but rather, whether plaintiff's disability would remain after he stopped his substance use.  *See Sousa*, 143 F.3d at 1245.

The ALJ failed to reconcile the opinions of Dr. Bilik and Dr. Anderson with evidence in the record that plaintiff continued to suffer disabling mental impairments after maintaining sustained sobriety.  Beginning on June 29, 2011, plaintiff continued to suffer from mood disorder, anxiety, and emotional and behavior changes related to drug abuse that were severe enough to be disabling *after* maintaining sustained sobriety.  The ALJ did not explain why this evidence does not support a finding that plaintiff's substance use was not material prior to June 29, 2011. Furthermore, both the opinions of Dr. Bilik and Dr. Anderson are relevant for the period up until the end of 2010.  Dr. Bilik conduct his report in October 6, 2010, and Dr. Anderson testified that plaintiff's substance was "highly material" from "2008-2010".  *Id*. at 23, 25, 209, 1337.  However, neither provides support for whether plaintiff's substance use was material *on* December 31, 2010,

18

the alleged onset date and the last date plaintiff was insured.  In light of subsequent evidence indicating that plaintiff's mental impairments were severe enough to be disabling even after attaining long-term sobriety, the ALJ's finding that plaintiff's substance use was material prior to June 29, 2011 is not supported with substantial evidence.

Also, the ALJ erred in rejecting the opinion of plaintiff's mental health clinical social worker Omar Geray, who treated plaintiff from November 5, 2010 until plaintiff was admitted to long-term rehabilitation on June 29, 2011. *Id*. at 360-61, 994.  The ALJ rejected the opinion of Geray, citing that a social worker is not an "acceptable medical source." *Id*. at 23.  However, the Social Security Administration recognizes the lack of any research data that can be used to reliably predict whether and to what extent a claimant's co-occurring mental disorder would improve absent the substance use and thus, has suggested that "other" non-medical sources, such as evidence from a social worker, that are generally not acceptable medical sources can be helpful for the ALJ in determining the materiality of DAA.  SSR 13-2p, 78 Fed. Reg. at 11944.

Upon remand, the ALJ should determine whether plaintiff's substance use was material to a finding of disability on December 31, 2010.  The ALJ should evaluate the opinions of Dr. Bilik and Dr. Anderson in light of plaintiff's ongoing disabling mental impairments despite maintaining sobriety on June 29, 2011.  The ALJ should also evaluate the plaintiff's treatment records between December 2010 and June 29, 2011, including the medical records during plaintiff's inpatient stay at the VA from January to February 2011 and treatment records from plaintiff's clinical social worker Omar Geray, to determine whether plaintiff's mental impairments would have remained in the absence of his substance use.  As the "materiality" determination is critical to whether December 31, 2010 was the onset date, if the record seems ambiguous as to whether plaintiff's substance use was material to a finding of disability on December 31, 2010, then the ALJ should consult a medical expert to make the determination. *Armstrong*, 160 F.3d at 589-90 (holding that where the record is ambiguous as to the onset date of disability, the ALJ must call a medical expert to aid in determining the onset date).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**CONCLUSION**

The Court REVERSES the Commissioner's decision to deny benefits and REMANDS for proceedings consistent with this Order.  The ALJ should determine the severity of plaintiff's symptoms on December 31, 2010, without attempting to separate out the symptoms related to plaintiff's substance use.  If the ALJ finds that plaintiff's symptoms are severe enough to be disabling after completing the five-step disability, then the ALJ should assess the materiality of plaintiff's substance use on December 31, 2010.  If the ALJ finds that plaintiff's substance use was material to a finding of disability on December 31, 2010, then plaintiff was not disabled as of December 31, 2010, the last date insured, and does not qualify for DIB.  If the ALJ determines that plaintiff's mental impairments as of December 31, 2010 would remain disabling if plaintiff stopped his substance use, then plaintiff will be found to have been disabled on December 31, 2010, thereby qualifying for DIB.


**IT IS SO ORDERED.**

Dated:  May 19, 2015

_____
SUSAN ILLSTON
United States District Judge